**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| REALIZE GROUP, INC. D/B/A<br>REALIZE THERAPEUTICS CORP.,<br><br>Plaintiff,<br>v.<br><br>DR. WILLIAM DAVIS,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br><br><br>Case No. 1:26-CV-9213 |

## COMPLAINT

Plaintiff Realize Group, Inc. d/b/a Realize Therapeutics Corp. ("Realize"), by and through its undersigned counsel Latimer LeVay Fyock LLC, hereby brings this Complaint against Defendant Dr. William Davis and alleges as follows:

## INTRODUCTION

1. Plaintiff Realize Group, Inc. d/b/a Realize Therapeutics Corp. ("Realize" or "Plaintiff") brings this action against its former Chief Medical Officer, William Davis, M.D. ("Davis" or "Defendant"), for a sustained course of conduct in which Davis has systematically breached his contractual, fiduciary, and confidentiality obligations to Realize while secretly building and assisting competing enterprises.

2. Davis served as Realize's Chief Medical Officer ("CMO") from approximately May 1, 2021, through July 1, 2026. During those five years, Davis: (a) secretly assisted a direct competitor, Cutting Edge Cultures, LLC ("CEC"), by designing competing *L. reuteri* products, participating in more than twenty funded laboratory tests, and earning undisclosed royalties; (b) promoted a second direct competitor, BiotiQuest, Inc., through his podcast, YouTube channel, and other platforms, earning commissions; (c) disclosed Realize's confidential clinical study data to



4921-5516-7935, v. 6

unauthorized third parties in violation of multiple written confidentiality directives; (d) disclosed Realize's primary probiotic strain supplier information to a third-party researcher without authorization and for non-Realize purposes; and (e) co-authored and facilitated the unauthorized submission of Realize's proprietary 2026 clinical study data to an open-access scientific journal without Realize's knowledge or authorization.

3. Davis's conduct was not inadvertent or isolated. It followed a consistent pattern across his entire tenure at Realize. He placed his personal financial interests above his contractual and fiduciary obligations to Realize. He did so while receiving an annual salary, while holding a Board of Directors seat, and while serving as CMO.

4. Realize seeks compensatory and exemplary damages, preliminary and permanent injunctive relief, an order requiring Davis to fulfill his post-Term obligations (including execution of patent inventor assignment forms and cooperation with patent prosecution), declaratory relief confirming Realize's exclusive ownership of all intellectual property and content assigned under the parties' agreements, and all other appropriate relief.

## THE PARTIES

5. Realize is a Colorado corporation registered as a foreign corporation in Illinois, with its principal place of business at 37 Sherwood Terrace, Suite 110, Lake Bluff, Illinois 60044. Realize is engaged in the business of developing, manufacturing, and commercializing probiotic and nutraceutical products.

6. Davis is a physician residing, upon information and belief, in Lake County, Illinois. Davis is the author of the books *Wheat Belly*, *Undoctored*, *Super Gut*, and *Super Body*, and operates online platforms including the "Davis Infinite Health" Inner Circle (a paid-subscriber platform) and DrDavisInfiniteHealth.com. From on or about May 1, 2021, through July 1, 2026,

Davis served as CMO of Realize and, for periods during that term, as a member of Realize's Board of Directors.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over Davis because Davis is a resident of Lake County, Illinois, within this District, and because: (a) Davis executed contractual agreements substantially connected with the State of Illinois, including the Founding Agreement (as hereinafter defined) and NDA (as hereinafter defined); (b) Davis breached those agreements and his fiduciary duties while serving as an officer and director of a corporation with its principal place of business in Illinois; and (c) Davis performed services and duties as CMO in Illinois.

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Realize's claim for misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* arises under the laws of the United States. This Court has supplemental jurisdiction over Realize's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to Realize's federal claim that they form part of the same case or controversy and arise from a common nucleus of operative fact.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Davis resides in this District and a substantial part of the events or omissions giving rise to Realize's claims occurred in this District, including Davis's performance of services as Realize's Chief Medical Officer and his conduct while serving in that role at Realize's principal place of business in Lake Bluff, Illinois. Venue is additionally proper pursuant to the parties' contractual consent to the exclusive jurisdiction and venue of courts located in Cook County, Illinois, which lies within this District, for any action relating to provisional remedies, including injunctive relief, under Founding Agreement Section 4(l).

## FACTUAL BACKGROUND

### The Founding Agreement and NDA

10. On May 1, 2021, Davis and Realize executed a Non-Disclosure Agreement (the "NDA"), imposing immediate and permanent confidentiality obligations upon Davis with respect to all Realize's Confidential Information. A true and correct copy of the NDA is attached hereto as **Exhibit 1**.

11. The NDA defines Confidential Information to include "any information which has commercial value and is either (i) technical information, including patent, copyright, trade secret, and other proprietary information, techniques, sketches, drawings, models, inventions, know-how, processes, apparatus, equipment, algorithms, software programs, software source documents, and formulae related to the current, future and proposed products and services of [Realize], or (ii) non-technical information relating to [Realize's] products, including without limitation pricing, margins, merchandising plans and strategies, finances, financial and accounting data and information, suppliers, customers, customer lists, purchasing data, sales and marketing plans, future business plans and any other information which is proprietary and confidential to [Realize]." *See* Exhibit 1.

12. On July 1, 2021, Davis and Realize executed a comprehensive agreement (the "Founding Agreement"), establishing the terms of Davis's five-year engagement as CMO of Realize. A true and correct copy of the Founding Agreement is attached hereto as **Exhibit 2**.

13. The Term of the Founding Agreement is five years from the date of execution.

14. Under Section 1(a) of the Founding Agreement, Davis agreed to provide ongoing services and development assistance using his expertise and knowledge to develop, refine, and improve ideas, concepts, patent disclosures, inventions, methods of use, technology, designs,

suppliers, and information "concerning products including Lactobacillus Reuteri ("LR"), Oxytocin, Cannabinoids (including Oleoylethanolamide and Palmitoylethanolamide), Omega-3, Vitamin D and other related nutritional compounds impacting human health (the "Products").

15. Under Section 1(a) of the Founding Agreement, Davis also agreed to provide ongoing services and development assistance using his expertise and knowledge to develop, refine, and improve "relationships with relevant suppliers and collaborators."

16. Under Section 1(b) of the Founding Agreement, Davis assigned to Realize all rights in and to: (i) an October 1, 2020, invention disclosure involving *L. reuteri* combined with OEA, PEA, and prebiotic fiber; (ii) a specified clinical study design involving *L. reuteri* NCIMB 30242/36301; and (iii) all future inventions and rights associated with the Products and matters described therein, including all rights in Realize's provisional patent applications.

17. Under Section 2(a) of the Founding Agreement, Davis assigned and granted to Realize the exclusive right to use, in the Realize Field of Operations (the field of consumer health products), all content previously or in the future developed or created by Davis relating to health and nutrition, including written works, blog content, videos, instructions, advice, programs, book content, future and new content, presentations, scientific and medical rationale, and promotional materials.

18. Under Section 2(b)(iii) of the Founding Agreement, Davis agreed not to promote, endorse, or recommend products that are Directly Competitive with Realize's products unless he receives express permission from Realize. "Directly Competitive" includes products with similar ingredients or targeting the same health conditions. Additionally, once Davis's annual income from Realize exceeded $200,000, Davis was prohibited from promoting any other company's products without specific Realize permission.

19. Under Section 2(c) of the Founding Agreement, Davis agreed to use best efforts to use social media, blogs, websites, and other platforms to promote Realize and its products and business, and agreed to liaise with the medical and scientific community and make appearances and presentations for Realize.

20. Under Section 4(b) of the Founding Agreement, both Realize and Davis agreed not to disclose another party's Confidential Information or information about the Founding Agreement or transactions, except by consent or as otherwise permitted. Confidential Information is defined in Exhibit A to the Founding Agreement to include trade secrets; product specifications, data, know-how, formulae, compositions, processes, designs, samples, inventions and ideas; research and development; manufacturing and distribution methods and processes; customer information, pricing, market studies, and business plans; and all notes, analyses, compilations, studies, summaries, and materials based on such information.

21. The confidentiality obligations under Founding Agreement Section 4(b) survive the expiration or earlier termination of the Agreement pursuant to Section 4(f). The NDA's nondisclosure and non-use obligations likewise survive termination of any relationship between the parties permanently and without time limitation. The NDA expressly provides that breach causes irreparable and continuing damage with no adequate remedy at law and entitles Realize to injunctive relief, specific performance, and other relief.

22. Under Section 4(k) of the Founding Agreement, Realize and Davis agreed to reasonably cooperate, furnish further information, execute and deliver documents, and do other acts and things reasonably requested to carry out the Founding Agreement and contemplated transactions.

23. Davis was compensated by Realize throughout the term of the Founding Agreement. By 2025, and continuing throughout the end of the term of the Founding Agreement, Davis's annual salary exceeded $200,000 per year. This compensation level triggered Davis's absolute obligation under Founding Agreement Section 2(b)(iii) to cease all promotion of any other company's products without specific Realize authorization. Davis never requested, and Realize never gave, such authorization.

**<u>Realize's Research Program: the LRDR Strain and Clinical Studies</u>**

24. One of Realize's core commercial assets is the LRDR *L. reuteri* probiotic strain. The LRDR strain is the subject of Realize's clinical and laboratory research, is commercially marketed in Realize's products including MyReuteri and ReuteriBiotic, and is the subject of Realize's pending provisional patent applications. Davis is named as a co-inventor on all three provisional applications. All inventive rights are assigned to Realize under Founding Agreement Section 1(b).

25. Between 2022 and 2026, Realize funded and conducted multiple clinical and pre-clinical studies evaluating its LRDR product. All study data, results, findings, and analyses are Realize's assigned intellectual property under Founding Agreement Section 1(b) and Realize's Confidential Information under both the NDA and Founding Agreement Section 4(b).

26. The four clinical and pre-clinical studies included (1) a first animal study conducted in 2022, (2) a second animal study conducted in 2025, (3) a first human study conducted in 2022, and (4) a second human study (the "LOSSLR Study") conducted in 2025 and 2026. The parameters and results of these studies constitute Realize's Confidential Information and trade secrets.

27. The LOSSLR Study was funded entirely by Realize and evaluated Realize's ReuteriBiotic and Adiponexin products. The study design, methodology, measured endpoints, participant parameters, protocols, and resulting analyses remain confidential to Realize and constitute trade secrets.

28. The LOSSLR Study produced confidential, commercially valuable positive findings, supporting Realize's intellectual property, research, and product-development strategy. These findings form the evidentiary basis for Realize's provisional patents and constitute Realize's Confidential Information and trade secrets.

29. Realize further funded the development of a proprietary methodology for use in the LOSSLR Study and future research. The methodology, protocols, and results constitute Realize's Confidential Information and trade secrets.

**<u>Confidentiality Directives and Davis's Unauthorized Disclosures</u>**

30. On or about February or March 2026, Davis disclosed or acknowledged Realize's research results to MIT researchers, including Dr. Susan Erdman, communicating information regarding Realize's proprietary research findings.

31. On February 23, 2026, anticipating LOSSLR clinical trial results, Realize's Co-Founder and Chief Executive Officer, Mark Nottoli ("Nottoli"), issued a formal confidentiality directive to all Realize team members, including Davis, stating that all information relating to the clinical trial, including study design, methods, protocols, interim and final data, analyses, anticipated or actual results, and strategic plans, constitutes confidential, proprietary, and trade secret information of Realize. The directive prohibited sharing, discussing, describing, hinting at, or communicating study information through any channel without prior written authorization.

32. In response to the February 23, 2026, directive, Davis replied only: "I won't be in the office until further notice." Davis thereafter ceased attending office meetings and stopped participating in weekly business meetings.

33. On May 14, 2026, Realize's Vice President of Research and Development, David Worthen, issued a formal LOSSLR External Communications & Disclosure Guardrails document to all Realize team members, including Davis, expressly prohibiting the use of all LOSSLR study data across manuscripts, preprints, presentations, social media, and all other channels until further notice. The guardrails informed Davis that unauthorized disclosure may cause irreparable harm, including loss of patent rights, licensing value, competitive advantage, and commercial value.

34. On or about June 26, 2026, a manuscript concerning the Realize-funded confidential clinical study was submitted to *Microorganisms*/MDPI by Dr. Raul Cano as corresponding author, listing Davis as a co-author (the "Manuscript"). The submission confirmation was delivered to Davis's Realize corporate email address. Davis did not notify Realize that he was drafting the Manuscript or that he had submitted it for publication.

35. The Manuscript disclosed Realize's proprietary LOSSLR study design, intervention methodology, and complete results. It was submitted under a Creative Commons CC BY license, which would have permanently and irrevocably made Realize's trade secrets publicly available. The Manuscript was submitted without Realize's knowledge, consent, or authorization, in direct violation of the May 14, 2026 LOSSLR Guardrails, the February 23, 2026 confidentiality directive, the Founding Agreement, and the NDA.

36. Immediately upon discovering the unauthorized submission, Realize demanded its immediate withdrawal from consideration for publication. Dr. Cano subsequently requested withdrawal and confirmed the Manuscript would not be further distributed.

37. In or about May 2026, Davis introduced Dr. Raul Cano to Realize's primary LRDR strain supplier. Davis made this introduction via his Realize corporate email address. Davis described Cano as "looking for new microbial sources for his projects."

38. The identity, contact information, and commercial context of Realize's supplier relationships constitute Confidential Information and trade secrets under the Founding Agreement and NDA. Davis was not authorized to disclose that supplier information to a third-party researcher for non-Realize purposes. The disclosure threatened to give the researcher access to Realize's primary supply chain for its core proprietary LRDR strain and reflected Davis's use of Realize's confidential business information contrary to his duties of loyalty, confidentiality, and good faith.

**Secret Assistance to Cutting Edge Cultures**

39. Beginning in late 2021, while serving as Realize's CMO and a member of its Board of Directors, Davis secretly assisted Roy Bingham and Cutting Edge Cultures, LLC ("CEC") in designing and formulating competing *L. reuteri* products. CEC launched competing products in February 2022, including LR Superfood Starter, PreBio Plus Fiber Blend, and *L. Gasseri* SuperFood Starter, all using Davis's name, endorsement, and *Super Gut* references.

40. On March 9, 2022, Davis received a CEC Amazon product listing screenshot bearing the legend "Recommended By Dr William Davis, MD in the Best Selling Book Super Gut." Rather than notifying Realize of this competing use, Davis suggested minor edits to the listing.

41. Davis participated in more than twenty laboratory tests for CEC product development and received royalty or other compensation from CEC, all while concealing these

activities from Realize. These activities directly violated Founding Agreement Section 2(b)(iii)'s prohibition on promoting, endorsing, or recommending Directly Competitive product.

**Promotion of BiotiQuest/SugarShift**

42. Beginning by at least March 18, 2021, Davis promoted BiotiQuest, Inc. and its SugarShift product through podcast, YouTube, and other platform appearances. Martha Carlin, BiotiQuest's founder, reported that Davis's appearances generated 124 sales totaling $6,659, and proposed $300–$500 per podcast appearance as commission.

43. On or about May 17, 2023, Davis emailed third parties, including Martha Carlin, BiotiQuest's founder, regarding the results of the Realize-founded clinical trials. Davis's disclosure of Realize's trade secrets to third parties was done without Realize's knowledge or authorization.

44. On April 16, 2025, Nottoli confirmed Davis's salary increase to $240,000 and received Davis's oral assurance that he would no longer promote SugarShift or other supplement companies.

45. On October 27, 2025, Nottoli sent Davis formal notice with screenshots demonstrating that competing products, including SugarShift, remained promoted on Davis's platforms, and demanded removal by October 31, 2025. The products were not removed.

46. On January 2, 2026, Davis emailed Martha Carlin from his Realize corporate email address, disparaging Nottoli as "terrifyingly and concerningly paranoid and emotionally erratic," stating he was considering steps to "alleviate" Nottoli's involvement, and confirming continued informal promotion of competing products while serving as Realize's CMO.

47. On June 2, 2026, Davis described SugarShift as a commercially valuable competing product capable of generating "$100 million per year" and discussed using Realize's proprietary strain and formulation knowledge to improve SugarShift, Realize's direct competitor's product.

48. On June 23, 2026, Davis stated "we can do this without Mark" regarding work involving SugarShift, demonstrating his intent to use Realize's trade secrets, proprietary knowledge, and confidential information for a competing enterprise while excluding Realize's CEO and majority shareholder and acting contrary to Realize's interests.

**Regulatory Noncompliance**

49. Realize's products are dietary supplements regulated by the FDA and FTC. As a physician, author, and brand ambassador, Davis's public statements about Realize's products and ingredients created significant regulatory compliance risks.

50. Davis's disease and treatment claims made in interviews, videos, and blog posts, including claims about microbes outperforming drugs, SIBO treatments, disease prevention, and dementia/Alzheimer's claims create regulatory compliance risks for Realize.

51. These risks include FDA warning letters; product seizure or detention, which would prevent Realize's products from being distributed in interstate commerce; and civil money penalties of up to $250,000 for a first violation and $500,000 for subsequent violations. It also includes FTC cease-and-desist orders, civil penalties, and disgorgement of sales. Any of these regulatory actions creates a substantial risk that retailers and distribution partners would refuse to stock, or would delist, Realize's products.

52. On or about March 10, 2026, Realize organized a professional video shoot at a cost of approximately $10,000. Davis appeared but refused to follow the approved script, used disease-

treatment language contrary to regulatory guidance, and rendered the production substantially unusable.

53. Realize repeatedly warned Davis directly and in writing that his public statements created this regulatory exposure for Realize. Despite these repeated warnings, Davis continued to make substantially similar disease and drug-comparison claims in public videos and appearances.

54. Realize then demanded that Davis take down his public videos and written content that included the disease and drug-comparison claims, again citing the regulatory exposure he was creating for Realize. Davis did not remove the identified content or otherwise comply.

**Disparagement of Pharmaceutical Companies and Medications**

55. In numerous public videos and appearances, Davis has also disparaged pharmaceutical companies and FDA-approved medications. Davis has stated, among other things, that Realize's ingredients are the "complete opposite" of GLP-1 drugs, that microbes work "better than any drug" for conditions such as gout, that statins have "very minimal effect," and that "pharmaceutical solutions are terrible." Davis has further alleged, without evidentiary support, that physicians receive an "indirect kickback" for prescribing GLP-1 agonist medications.

56. Davis's public disparagement of pharmaceutical companies and medications jeopardizes Realize's own potential business relationships and commercial partnerships with pharmaceutical and telehealth companies.

57. Davis made these disparaging statements about pharmaceutical companies and medications while serving as Realize's Chief Medical Officer, an officer of the company, and a member of its Board of Directors, and in disregard of Realize's own commercial interests and potential business relationships with pharmaceutical and telehealth companies.

**Formal Demand and Davis's Response**

58. On June 29, 2026, Realize sent Davis a formal demand letter requiring, among other things: (a) confirmation of Realize's ownership of all assigned IP and content; (b) cessation and removal of unauthorized videos and media content; (c) execution of patent inventor assignments for the pending patent applications; (d) post-term confidentiality compliance; (e) compliance with vendor, supplier, and collaborator restrictions; (f) withdrawal of the MDPI manuscript; and (g) return of all company property, including an Apple MacBook, mobile device, keys, corporate credit card, product samples, customer and supplier records, and all tangible and electronic materials containing company information.

59. Davis failed to respond to Realize's demands.

60. On July 10, 2026, Realize sent Davis an additional letter requesting Davis acknowledge his resignation from the Board of Directors, return Realize's physical property (specifically phone, laptop, and corporate credit card), and offered an independent third-party pickup or drop-off arrangement.

61. On July 14, 2026, Davis responded via counsel. Davis's counsel contended, among other things, that: (a) Realize "materially breached" the Founding Agreement by failing to pay promised compensation and therefore cannot selectively enforce it; (b) certain provisions of the Founding Agreement are an unenforceable "de facto non-compete"; (c) Davis refused to sign patent inventor assignments; and (d) Davis would retain Realize's computer and property as purported "evidence preservation" pending dispute resolution.

**<u>Realize's Trade Secrets</u>**

62. The following categories of information constitute Realize's trade secrets within the meaning of the Illinois Trade Secrets Act, 765 ILCS 1065/2(d): (a) proprietary clinical and pre-clinical study designs, methodologies, protocols, data, results, and analyses; (b) proprietary

assay methodologies, protocols, and results developed for Realize; (c) proprietary strain formulation knowledge, specifications, and product formulation concepts; (d) proprietary testing methodologies and protocols; and (e) supplier identities, terms, pricing, contact information, and relationship context.

63. Such information derives independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from its disclosure or use.

64. Realize has taken reasonable measures to maintain the secrecy of its trade secrets, including: (a) requiring Davis to execute an NDA executed; (b) including confidentiality provisions (Sections 4(b) and 4(f)) in the Founding Agreement; (c) limiting access to confidential research data on a need-to-know basis; (d) issuing the formal February 23, 2026 confidentiality directive; (e) issuing the May 14, 2026, LOSSLR Guardrails; and (f) issuing the June 29, 2026 demand letter expressly reiterating Davis's confidentiality obligations.

## COUNT I
## BREACH OF FOUNDING AGREEMENT

65. Realize incorporates by reference its allegations in Paragraphs 1 through 64 above as though fully set forth herein.

66. The Founding Agreement is a valid and enforceable contract between Realize and Davis.

67. Davis breached the Founding Agreement, including but not limited to the following provisions:

a. Section 1(a), by failing to provide ongoing services and development assistance and by diverting his expertise to competitors;

b. Section 1(b), by refusing to execute patent inventor assignments and cooperate with patent prosecution for the pending patent applications;

c. Section 2(a), by using content assigned exclusively to Realize for competing purposes;

d. Section 2(b)(iii), by promoting, endorsing, and recommending Directly Competitive products (CEC and BiotiQuest/SugarShift) without Realize's express permission, including after his compensation exceeded $200,000;

e. Section 2(c), by failing to use best efforts to promote Realize and instead using his platforms to promote competitors;

f. Section 4(b), by disclosing Realize's Confidential Information to unauthorized third parties; and

g. Section 4(k), by refusing to cooperate, furnish information, execute documents, and perform acts reasonably requested to carry out the agreement.

68. Realize performed its obligations under the Founding Agreement or, alternatively, was excused from further performance by Davis's material and repeated breaches.

69. As a direct and proximate result of Davis's breaches, Realize has suffered and continues to suffer damages in an amount to be proven at trial, including but not limited to lost profits, diminished value of trade secrets and intellectual property, regulatory compliance costs, and wasted expenditures.

**COUNT II**
**BREACH OF NON-DISCLOSURE AGREEMENT**

70. Realize incorporates by reference the allegations in Paragraphs 1 through 64 above as though fully set forth herein.

71. The NDA is a valid and enforceable contract between Realize and Davis.

72. Davis breached the NDA by disclosing, disseminating, and using Realize's Confidential Information, including but not limited to:

a. disclosing LOSSLR study results and proprietary assay and biomarker research findings to MIT researchers and other unauthorized third parties;

b. co-authoring and facilitating the submission of the Manuscript containing Realize's proprietary clinical trial data;

c. disclosing Realize's supplier identity and relationship context to unauthorized third parties;

d. using Realize's proprietary strain and formulation knowledge to assist competitors CEC and BiotiQuest; and

e. Retaining Realize's confidential materials and property without authorization.

73. Realize performed its obligations under the NDA.

74. As a direct and proximate result of Davis's breaches of the NDA, Realize has suffered and continues to suffer damages in an amount to be proven at trial. Pursuant to NDA Section 5, Davis's breaches have caused and continue to cause irreparable and continuing damage for which there is no adequate remedy at law.

## COUNT III
## BREACH OF FIDUCIARY DUTY

75. Realize incorporates by reference the allegations in Paragraphs 1 through 64 above as though fully set forth herein.

76. As Realize's CMO, member of the Board of Directors, and a paid employee occupying a position of trust and confidence, Davis owed fiduciary duties to Realize, including duties of loyalty, care, good faith, and candor.

77. Davis breached his fiduciary duties by, among other things:

a. secretly assisting direct competitors CEC and BiotiQuest while serving as Realize's CMO and director;

b. using his position and access to Realize's confidential information for personal gain and to benefit Realize's competitors;

c. disclosing Realize's primary supplier identity and relationship context to a third-party researcher for non-Realize purposes;

d. making public disease and treatment claims regarding Realize's products despite Realize's written warnings that such claims created regulatory exposure for Realize, including the risk of FDA enforcement, FTC penalties, and that retailers could refuse to stock or would delist Realize's products;

e. publicly disparaging pharmaceutical companies and medications in a manner that jeopardizes Realize's potential business relationships and commercial partnerships with pharmaceutical and telehealth companies; and

f. failing to disclose material conflicts of interest and acting against Realize's interests while holding positions of trust.

78. Davis's breaches of fiduciary duty were willful, wanton, and in conscious disregard of Realize's rights.

79. As a direct and proximate result of Davis's breaches of fiduciary duty, Realize has suffered and continues to suffer damages in an amount to be proven at trial, including diminished value of intellectual property and wasted compensation paid to Davis during the period of his disloyalty.

## COUNT IV
## MISAPPROPRIATION OF TRADE SECRETS
## (Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*)

80. Realize incorporates by reference the allegations in Paragraphs 1 through 64 above as though fully set forth herein.

81. The information described in Paragraphs 62-64 above constitutes trade secrets within the meaning of the Defend Trade Secrets Act, 18 U.S.C. § 1839(3).

82. The trade secrets described above relate to products and services used in, and intended for use in, interstate and foreign commerce, including products which Realize develops, manufactures, markets, and sells to customers located throughout the United States.

83. Davis acquired knowledge of and access to Realize's trade secrets through his position as Realize's Chief Medical Officer and member of its Board of Directors, and through the confidential relationship established by the Founding Agreement and the NDA, under circumstances giving rise to a duty to maintain the secrecy of such trade secrets and to limit their use.

84. Without Realize's consent, and in violation of his duty to maintain the secrecy of Realize's trade secrets, Davis has misappropriated Realize's trade secrets, in violation of the Defend Trade Secrets Act, by.

a. disclosing Realize's proprietary clinical study data and results to unauthorized third parties, including through the Manuscript submission;

b. disclosing Realize's proprietary assay and biomarker research findings to MIT researchers and other unauthorized third parties;

c. disclosing Realize's primary supplier identity and relationship context to a third-party researcher;

d. using Realize's proprietary formulation knowledge and trade secrets to assist competitors CEC and BiotiQuest/SugarShift;

e. discussing the use of Realize's proprietary strain and formulation knowledge to improve a competing product; and

f. retaining Realize's confidential materials and trade secret information after the conclusion of the term without authorization.

85. Davis's acquisition, disclosure, and use of Realize's trade secrets, as alleged above, was without Realize's express or implied consent and constitutes misappropriation of trade secrets within the meaning of 18 U.S.C. § 1839(5).

86. As a direct and proximate result of Davis's misappropriation of Realize's trade secrets in violation of the Defend Trade Secrets Act, Realize has suffered and continues to suffer actual loss and unjust enrichment, and faces a threat of continued and irreparable injury, in an amount to be proven at trial.

87. Davis's misappropriation was willful and malicious, entitling Realize to exemplary damages of up to two times the amount of its actual damages pursuant to 18 U.S.C. § 1836(b)(3)(C), as well as recovery of its reasonable attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D).

88. Pursuant to 18 U.S.C. § 1836(b)(3)(A), Realize is further entitled to injunctive relief to prevent any actual or threatened misappropriation of its trade secrets by Davis.

## COUNT V
## MISAPPROPRIATION OF TRADE SECRETS
## (Illinois Trade Secrets Act, 765 ILCS 1065)

89. Realize incorporates by reference the allegations in Paragraphs 1 through 64 above as though fully set forth herein.

90. The information described in Paragraphs 62-64 above constitutes trade secrets within the meaning of the Illinois Trade Secrets Act, 765 ILCS 1065/2(d).

91. Davis has misappropriated Realize's trade secrets by:

a. disclosing Realize's proprietary clinical study data and results to unauthorized third parties, including through the Manuscript submission;

b. disclosing Realize's proprietary assay and biomarker research findings to MIT researchers and other unauthorized third parties;

c. disclosing Realize's primary supplier identity and relationship context to a third-party researcher;

d. using Realize's proprietary formulation knowledge and trade secrets to assist competitors CEC and BiotiQuest/SugarShift;

e. discussing the use of Realize's proprietary strain and formulation knowledge to improve a competing product; and

f. retaining Realize's confidential materials and trade secret information after the conclusion of the term without authorization.

92. Davis acquired knowledge of and access to Realize's trade secrets through his position as CMO and through the confidential relationship established by the Founding Agreement and NDA.

93. Davis's disclosure and use of such trade secrets without Realize's consent constitutes misappropriation.

94. As a direct and proximate result of Davis's misappropriation, Realize has suffered and continues to suffer actual loss and unjust enrichment in an amount to be proven at trial.

95. Davis's misappropriation was willful and malicious, entitling Realize to exemplary damages of up to twice the amount of damages otherwise recoverable under 765 ILCS 1065/4(b), as well as attorneys' fees under 765 ILCS 1065/5.

**COUNT VI**
**DECLARATORY JUDGMENT**

96. Realize incorporates by reference the allegations in Paragraphs 1 through 64 above as though fully set forth herein.

97. An actual and justiciable controversy exists between Realize and Davis regarding Realize's ownership of all intellectual property, inventions, and content assigned under Founding Agreement Sections 1(b) and 2(a).

98. Realize seeks a declaratory judgment pursuant to 735 ILCS 5/2-701 declaring that Realize is the exclusive owner of all intellectual property, inventions, patent rights, and content assigned by Davis under the Founding Agreement, including all rights in provisional patent applications.

**COUNT VII**
**CONVERSION**

99. Realize incorporates by reference the allegations in Paragraphs 1 through 64 above as though fully set forth herein.

100. Realize is the owner of certain tangible personal property entrusted to Davis during his employment, including an Apple MacBook computer, a mobile device, keys, a corporate credit card, product samples and materials, customer and supplier records, and handwritten sales notes and notebooks containing company information.

101. The Apple MacBook computer and mobile device not only belong to Realize, but also contain Realize's Confidential Information and trade secrets.

102. Realize has demanded the return of its property on multiple occasions, including in the June 29, 2026 demand letter and the July 10, 2026 correspondence.

103. Davis has failed and refused to return Realize's property, asserting a purported right to retain it for "evidence preservation" pending dispute resolution.

104. Davis's retention of Realize's property without authorization or legal right constitutes conversion.

105. As a direct and proximate result of Davis's conversion, Realize has been deprived of the use of its property and has suffered and continues to suffer damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Realize Group, Inc. d/b/a Realize Therapeutics Corp. respectfully requests that this Court enter judgment in its favor and against Defendant William Davis, M.D., and grant the following relief:

A. Compensatory damages in an amount to be proven at trial, including lost profits, diminished value of trade secrets and intellectual property, wasted expenditures, and regulatory compliance costs;

B. Exemplary damages of up to twice the amount of damages otherwise recoverable for willful and malicious misappropriation of trade secrets under 765 ILCS 1065/4(b) and 18 U.S.C. § 1836(b)(3)(C);

C. A preliminary and permanent injunction:

   a. restraining Davis from submitting, publishing, or facilitating publication of any manuscript, article, or presentation containing Realize's Confidential Information and trade secrets;

   b. restraining Davis from promoting or assisting Directly Competitive products using Realize's Confidential Information and trade secrets;

   c. requiring Davis to return all Realize property, Confidential Information, and trade secret materials in his possession;

   d. requiring Davis to certify under oath that all Realize property and materials have been returned or destroyed; and

   e. requiring Davis to execute patent inventor assignment forms for provisional patent applications and to cooperate with patent prosecution as required by Founding Agreement Section 4(k).

D. A declaratory judgment as set forth in Count V;

E. Attorneys' fees and costs of suit pursuant to 765 ILCS 1065/5 and 18 U.S.C. § 1836(b)(3)(D), and as otherwise permitted by law or contract;

F. Pre-judgment and post-judgment interest at the maximum rate permitted by law;

G. Such other and further relief as the Court deems just and equitable.

Dated: August 3, 2026

Respectfully submitted,

Realize Group, Inc. d/b/a Realize Therapeutics Corp.

By: */s/ Vincent T. Borst*
One of Their Attorneys

Vincent T. Borst (6192904)
vborst@llflegal.com
Katie J. Welch (6330618)
kwelch@llflegal.com
Latimer LeVay Fyock LLC
55 W. Monroe Street, Suite 1100
Chicago, IL 60603
(312) 422-8000